## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: RICHARD D. JANSSEN,    :    Chapter 13
                              :
              Debtor.         :    Bky. No. 04-11159 ELF
                              :
                              :
                              :
                              :

# M E M O R A N D U M

BY:   ERIC L. FRANK, U.S. BANKRUPTCY JUDGE

## I.  INTRODUCTION

Presently before me is the Motion of Debtor Richard D. Janssen ("the Debtor") to Reopen his closed chapter 13 bankruptcy case ("the Motion to Reopen").

A few months after this case was closed, Chase Home Finance LLC ("Chase"), the holder of the mortgage on the Debtor's residence, started foreclosure proceedings against the Debtor in state court.  The Debtor asserts that he fully performed all of his obligations under his chapter 13 plan, thereby curing his prepetition default under the mortgage, and also, that he paid all of the monthly mortgage payments that fell due on the mortgage after the conclusion of the bankruptcy case.  The Debtor contends that Chase's initiation of foreclosure proceedings violates the terms of his confirmed plan.  He wants to reopen the bankruptcy case to prosecute an adversary proceeding against Chase and obtain equitable relief.

Chase opposes the Motion to Reopen.  Chase asserts that the Debtor defaulted on his mortgage obligations after the bankruptcy case was closed and that any dispute regarding this asserted post-closing default should be resolved in state court, not bankruptcy court.

For the reasons set forth below, the Motion to Reopen will be granted.

## II.  BACKGROUND

### A.

The Debtor commenced this case by filing a chapter 13 bankruptcy petition on January 28, 2004.[1]  Early in the case, on February 11, 2004, Chase filed a secured proof of claim in the total amount of $21,418.44, with prepetition arrears of $10,123.44 ("the Prepetition Arrears").[2]  The Debtor then filed a Chapter 13 Plan on February 12, 2004.  He later filed a First Modified Chapter 13 Plan ("the First Amended Chapter 13 Plan") and a document titled "Amended Plan Summary" ("the Plan Summary") on September 22, 2004.  The First Amended Chapter 13 Plan was confirmed by Order dated November 2, 2004.

The confirmed First Amended Chapter 13 Plan provided for the Debtor to make periodic payments to the Chapter 13 Trustee totaling $25,233.00 ("the Base Amount"), but was terse in its description of the treatment of the various claims against the Debtor.  The provision that appears to address Chase's claim is Paragraph (e), which states that the holder of an allowed secured

---

[1]    Neither party offered any testimonial or documentary evidence at the October 21, 2008 hearing.  To provide a factual context for analyzing the Motion to Reopen and Chase's Response, I will refer to various documents filed in the bankruptcy case.  I may take judicial notice of the dockets and the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute.  See Fed. R. Evid. 201;  In re Scholl, 1998 WL 546607, at *1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998);  See also In re Indian Palm Assocs., Ltd., 61 F.3d 197, 205 (3d Cir. 1995).

[2]    See Claim No. 1.  The Claims Register lists the claimant as "Deutsche Bank National Trust Company."  However, the claim itself was filed by an attorney and identifies "Chase Manhattan" as the name of the party "where payments should be sent."  Id.

claim shall retain its lien and "be paid cash in such amounts as to have a value, as of the effective

date of the plan, that is not less than the allowed amount of such claim, or the debtor may

surrender the security."  This language suggests that the First Amended Chapter 13 Plan was

intended to pay off Chase's entire allowed secured claim.[3]  However, the Plan Summary appears

to contradict Paragraph (e).  The Plan Summary provides for the distribution of the Base Amount

as follows:

| | |
|---|---|
| Debtor's counsel | $ 1,250.00 |
| IRS | $10,520.36 |
| **Chase** | **Arrears of $10,127.44 with regular post petition** |
| City of Philadelphia | $ 1,280.00 |
| Pro Rata Distribution to Unsecured Creditors | |

See Docket Entry No. 27 (emphasis added).

Reading the First Amended Chapter 13 Plan and the Plan Summary together  –

particularly the use of the words "arrears" and "with regular post petition" in the Plan Summary –

---

[3]        A chapter 13 debtor has four (4) options for treatment of a secured claim in a chapter 13
plan.  First, the debtor may provide for full payment of the claim.  See 11 U.S.C. §1325(a)(5)(B) (statutory
provision in its incarnation prior to the 2005 amendments to the Bankruptcy Code); In re Bryant, 323 B.R.
635, 645 (Bankr. E.D. Pa. 2005); see generally Till v. SCS Credit Corp., 541 U.S. 465, 468-469, 124
S.Ct. 1951, 1955 (2004) (discussing methodology for determining present value of a secured claim being
paid in full through a stream of plan payments).  Second, the debtor may provide for a "cure" of the
prepetition delinquency.  See 11 U.S.C. §1322(b)(5); Sapos v. Provident Inst. of Sav., 967 F.2d 918, 922
(3d Cir. 1992) (referring to §1322(b)(5) as the "cure and maintain option"); see generally 2 Keith M.
Lundin, Chapter 13 Bankruptcy ¶101.1 (3d ed. 2004).  Third, the Debtor can surrender the secured
property to the secured creditor.  11 U.S.C. §1325(a)(5)(C).  Finally, the debtor may choose to "not
provide" for the secured claim at all, in which case the claim and the lien pass through the bankruptcy case
unaffected.  See In re Waldman, 75 B.R. 1005, 1006 (Bankr. E.D. Pa. 1987); 8 Collier on Bankruptcy
¶1322.06[1][a] (15th rev. ed. 2006); see generally Estate of Lellock v. Prudential Ins. Co., 811 F.2d 186,
189 (3d Cir. 1987) (even though underlying debt is discharged, lien created by the debt is not affected by
the discharge order); Matter of Tarnow, 749 F.2d 464 (7th Cir. 1984) (creditor's lien is not affected by the
bankruptcy discharge unless the lien is modified during the case pursuant to a specific Code provision, such
as 11 U.S.C. §§522(f) or 1322(b)(2)).

it is obvious that the Debtor intended the plan to provide for a cure of the Prepetition Arrears

pursuant to 11 U.S.C. §1322(b)(5).[4]

On August 7, 2007, the Debtor filed a Motion to Modify Plan After Confirmation ("the

Motion to Modify") and a single additional document titled "Second Modified Plan and a new

Amended Plan Summary" ("the Second Amended Plan").  In the Motion to Modify, the Debtor

asserted that the IRS had amended its priority claim of $10,520.36 to $0.00 and that all other

secured and priority claims had been paid in full.  Therefore, the Debtor sought to modify the

confirmed plan to reduce the Base Amount from $25,233.00 to $16,904.00.  There was no

opposition to the Motion to Modify and the Second Amended Plan was approved by Order dated

October 31, 2007.[5]

---

[4]  Section 1322(b)(5) provides that a chapter 13 plan may:

> provide for the curing of any default within a reasonable time and maintenance of
> payments while the case is pending on any unsecured claim or secured claim on
> which the last payment is due after the date on which the final payment under the
> plan is due.

[5]  In its entirety, the Second Amended Chapter 13 Plan reads as follows:

| | | |
|---|---|---|
| **TOTAL BASE AMOUNT** | | **$16,904.00** |
| **(A)** | **CIBIK & CATALDO** | **$1,250.00** |
| | **IRS** | **$3,054.34** |
| **(B)** | **Deutsch (Chase)** | **Arrears of $10,127.44 with regular post petition.** |
| | **City of Philadelphia** | **$1,280.00** |
| **(C)** | **Pro Rata Distribution to Unsecured Creditors** | |

The $3,054.34 payable to the IRS represents the amount that the Chapter 13 Trustee already had
distributed to the IRS before the IRS amended its claim to $0.00.

On January 11, 2008, the Chapter 13 Trustee filed his Final Report.  The Final Report stated that the Chapter 13 Trustee distributed $10,124.44 to Chase, i.e., the full amount of the Prepetition Arrears.[6]  The court granted the Debtor a chapter 13 discharge by Order dated February 19, 2008.  The bankruptcy case was closed on March 6, 2008.  See 11 U.S.C. §350(a).

On or about August 19, 2008, Chase filed an action in mortgage foreclosure against the Debtor in the Court of Common Pleas, Philadelphia County, docketed at No. 2477, August Term 2008 ("the Foreclosure Action").  On or about September 12, 2008, the Debtor filed a pro se Answer to the Complaint asserting, inter alia, that he had "made all of the payments in question" both during and after the conclusion of his bankruptcy case and that Chase was attempting to collect amounts "incurred prior to the bankruptcy discharge."[7]

---

[6]     Paragraph (e) of the confirmed First Amended Chapter 13 Plan provided for each secured creditor to receive a distribution "hav[ing] a value, as of the effective date of the plan, that is not less than the allowed amount of [its] claim. . . ."  See Docket Entry No. 27.  This language, providing for the payment over time of the "present value" of the allowed claim, also is found in 11 U.S.C. §1325(a)(5)(B), the Code provision that, generally speaking, sets forth one of the legal standards for treatment of secured claims in a chapter 13 plan.  The statutory language provides for the payment of postconfirmation "present value" interest to the holder of an allowed secured claim.  It is common for a debtor to insert the text of §1325(a)(5)(B) in a plan if the debtor intends to satisfy a secured claim in its entirety, rather than merely curing a prepetition delinquency. .  Debtors who provide for a cure of a default under §1322(b)(5) usually do not provide for the payment of interest on the allowed prepetition arrears.  See generally 11 U.S.C. §1322(e) (requiring debtor who proposes to cure a default to pay the amount "in accordance with the underlying agreement and applicable nonbankruptcy law" without any reference to "present value").

    If applied literally, Paragraph (e) of the First Amended Chapter 13 Plan could be read to mean that in this case, the Debtor intended to pay interest on the Prepetition Arrears.  However, the Debtor did not fund the plan sufficiently to pay the present value of Chase's claim for the Prepetition Arrears.  In any event, the Debtor and the Chapter 13 Trustee appear to have read the Plan Summary to supersede Paragraph (e) of the First Amended Plan.  No interest on the Prepetition Arrears was paid in this case.

[7]     See Defendant's Answer to Plaintiff's Complaint in Mortgage Foreclosure ¶¶5, 8.  Chase attached the Complaint in the Foreclosure Action and the Debtor's Answer thereto to its Response to the Motion to Reopen.  See Docket Entry No. 65.

**B.  The Debtor's Motion to Reopen**

The Debtor also filed the Motion to Reopen on September 12, 2008.  In the Motion to

Reopen, the Debtor requests that his bankruptcy case be reopened to permit him "to enforce the

terms of his confirmed plan" through the prosecution of an adversary proceeding.

Also on September 12, 2008, without waiting for the main case to be reopened, the

Debtor initiated an adversary proceeding ("the AP") by filing an adversary complaint against

Chase ("the AP Complaint").  See Adv. No. 08-0252.  In the AP, he requests that the court enjoin

Chase from proceeding in the foreclosure case and award him damages, costs and attorney's fees.

Chase filed a Response to the Motion to Reopen on October 10, 2008.  Chase also filed a

motion to dismiss the AP Complaint ("the Motion to Dismiss") on October 15, 2008.

A hearing on the Motion to Reopen was held and concluded on October 21, 2008.  At the

October 21, 2008 hearing, the parties agreed that the ruling on the Motion to Reopen in the main

bankruptcy case will be dispositive with respect to the Motion to Dismiss in the AP.

### III.  THE PARTIES' CONTENTIONS

The Debtor's legal theory in requesting that the bankruptcy case be reopened to accord

him relief is grounded in 11 U.S.C. §1327(a).  Section 1327(a) provides that the provisions of a

confirmed plan "bind" the debtor and  each creditor.

The Debtor contends that his confirmed plan provided for a "cure" of his prepetition

mortgage delinquency under 11 U.S.C. §1322(b)(5), that he performed all of his obligations under

his confirmed plan and that, consequently, his prepetition mortgage default necessarily was

"cured" at the conclusion of his bankruptcy case.  Because he also contends that he paid all of his

post-discharge monthly payments, the Debtor depicts Chase's initiation of the Foreclosure Action

as based on its failure to treat the mortgage default as having been cured by the Debtor's

performance of his obligations under the chapter 13 plan and, therefore, a failure to abide by the

terms of the confirmed plan.  The last step in the Debtor's theory is that a creditor's failure to

comply with the terms of a confirmed plan violates 11 U.S.C. §1327(a) and may be remedied by

this court under 11 U.S.C. §105(a).  See AP Complaint ¶12.  This legal theory finds support in In

re Padilla, 389 B.R. 409, 425-31 (Bankr. E.D. Pa. 2008) ("Padilla II").

Chase takes a different view.  In its opposition papers, Chase concedes that the Debtor

"fully complied" with his chapter 13 plan.  Chase Response to Motion to Reopen at 1.[8]  Chase

then asserts that the post-discharge foreclosure "arises out of Debtor's failure to make the . . .

post-discharge payments from February 2008 through July 2008," and that, as a result, the

bankruptcy court lacks subject matter jurisdiction to determine the propriety of Chase's

foreclosure efforts.  Id.

At the October 21, 2008 hearing, Chase supplemented its jurisdictional argument,

suggesting that even if the court has jurisdiction over this dispute, in its discretion, it should not

exercise that jurisdiction.

The Debtor disputes Chase's contention that this dispute arises from events that post-date

the conclusion of the bankruptcy case.  The Debtor attached bank records to his Answer to the

Complaint in the Foreclosure Action, copies of which were annexed to Chase's Response to the

Motion to Reopen.  The Debtor claims that these records demonstrate that he tendered all of the

---

[8]     However, see Part IVA below regarding the limited consequence of Chase's concession
with respect to the jurisdictional issues it has raised.

monthly payments that fell due after the conclusion of the bankruptcy case and that the parties'

dispute necessarily concerns acts or omissions occurring during the pendency of the bankruptcy

case  – i.e., that Chase must have failed to credit all of his payments or have assessed improper

charges, making it appropriate for this court to reopen the bankruptcy case and determine the

propriety of Chase's conduct.

Thus, the parties disagree whether the Debtor was current on his mortgage when Chase

initiated the Foreclosure Action  –  i.e., whether the Debtor's paid all of the monthly payments

due under the mortgage or, instead, whether Chase misapplied the Debtor's payments made by

the Debtor or, perhaps, assessed invalid charges against the Debtor's mortgage account.

The parties further disagree whether the dispute is traceable to:

> (1) the manner in which the plan payments distributed by the Chapter 13 Trustee
> plan were credited against the **prepetition default**;

> (2) monthly instalments or other charges allegedly due Chase in the
> **postpetition/pre-closing period** and/or

> (3) monthly instalments or other charges allegedly due Chase in **post-closing
> period**.

As explained below, the origin of the disputed default is relevant in analyzing the

jurisdictional issues presented.


### IV.   THE COURT HAS SUBJECT MATTER JURISDICTION

I now consider Chase's threshold argument that the bankruptcy court lacks subject matter

jurisdiction  under 28 U.S.C. §1334(b) to hear the AP that the Debtor wishes to prosecute and

therefore, should not reopen the bankruptcy case.  Chase's argument has both legal and factual

components that I will consider separately.

## A.

Chase's view is that the bankruptcy court lacks subject matter jurisdiction because the parties' dispute does not relate to the chapter 13 plan payments the Debtor made to the Chapter 13 Trustee and their distribution to Chase on account of the Prepetition Arrears. Chase's position is based on its premise that, under a plan that provides for a cure of a prepetition default under 11 U.S.C. §1322(b)(5), the payments the debtor makes to the chapter 13 trustee are the <u>only</u> payments made "under the plan." That premise is incorrect.

Curing a prepetition default under §1322(b)(5) involves more than merely making all of the required monthly payments to the chapter 13 trustee for distribution to the creditor on account of the prepetition delinquency.

> A cure of a prepetition default under 11 U.S.C. § 1322(b)(5) has two components. The debtor must make payments that "provide for the curing of any default within a reasonable time." The debtor must also provide for "the maintenance of payments while the case is pending."

<u>Venuto</u>, 343 B.R. at 132-33 (quoting 11 U.S.C. §1322(b)(5)); <u>accord</u> <u>Padilla II</u>, 389 B.R. at 433 ("In other words, going forward from the filing of the case, the debtor must perform his or her contractual obligations as they fall due postpetition, while simultaneously making a separate stream of payments to the chapter 13 trustee to cure the prepetition delinquency.").

As I have observed in both decisions cited above, the practice in some jurisdictions is for the debtor to make a single payment to the chapter 13 trustee, "who then makes payments to the secured creditor on account of both the prepetition delinquency and the postpetition 'maintenance

of payments' obligation."  Padilla II, 389 B.R. at 433 n.39; see also Venuto, 343 B.R. at 133

n.21.  The Eastern District of Pennsylvania is not such a jurisdiction.  In this district, the usual

practice under §1322(b)(5) (and the practice that was followed in this case) is for the debtor to

serve as the disbursing agent for the postpetition monthly instalment in fulfillment of the

"maintenance of payments" obligation and for the chapter 13 trustee to serve as the disbursing

agent for the distributions on account of the allowed claim for the prepetition delinquency.

The critical point here is that the identity of the disbursing agent **does not** determine

whether a payment required by §1322(b)(5) is "under the plan."  Rather, in a chapter 13 case, the

debtor's payments to the secured creditor on account of the monthly instalments falling due

postpetition **and** the debtor's payments to the chapter 13 trustee for satisfaction of the prepetition

delinquency are both payments made "under the plan."  See, e.g., In re Perez, 339 B.R. 385, 390

n. 4 (Bankr. S.D. Tex. 2006), aff'd, 373 B.R. 468 (S.D. Tex. 2007); accord In re Orawsky, 387

B.R. 128, 138 (Bankr. E.D. Pa. 2008); In re Padilla, 365 B.R. 492, 500-02 (Bankr. E.D. Pa.

2007) ("Padilla I").

Once the proper scope of the concept of payments made "under the plan" is recognized,

the jurisdictional issue may be framed as follows: does the bankruptcy court have jurisdiction

under 28 U.S.C. §1334(b) to reopen a bankruptcy case to determine whether a chapter 13 debtor

cured a prepetition default by fully performing his plan payment obligations under 11 U.S.C.

§1322(b)(5) both to the trustee and to the creditor on account the obligations arising postpetition.

In 2006, in In re Venuto, I had occasion to consider this question and applied the standard

for the exercise of post-confirmation jurisdiction articulated by our Court of Appeals in In re

Resorts International, Inc., 372 F.3d 154, 166-69 (3d Cir. 2004): whether the matter has a close

nexus to the bankruptcy plan or the case.  "Matters that affect the interpretation, implementation,

consummation, execution, or administration of the confirmed plan will typically [satisfy the]

requisite close nexus [test]."  Resorts, 372 F.3d at 166-67 (quoted in Venuto, 343 B.R. at 128).

In Venuto, I concluded that "[t]here may be no issue that has a closer nexus to a chapter 13

bankruptcy case," 343 B.R. at 129,[9] and held that the bankruptcy court has jurisdiction over a

dispute whether a chapter 13 debtor had fully performed his plan obligations (and therefore had

effected a cure under §1322(b)(5) of a prepetition default).

      In Venuto, I also considered the two (2) decisions Chase now cites in support of its

jurisdictional argument, Coffin v. Malvern Federal Savings Bank, 90 F.3d 851 (3d Cir. 1996) and

In re Hurst, 2004 WL 557203 (Bankr. E.D. Pa. Mar. 3, 2004).  I concluded that any statement in

Coffin that may be read to suggest that all disputes concerning the final impact of a chapter 13

plan on a mortgagee's rights must be decided in a nonbankruptcy forum was non-binding dictum.

Further, I found that Hurst was factually distinguishable and, to the extent that the court

considered itself bound by Coffin, it was based on an overly broad reading of that appellate

decision.  Venuto, 343 B.R. at 129-31.

      Chase presents no other arguments in support of its position and has not cited any post-

Venuto decisions that undermine its precedential value.  Therefore, I adhere to the view that the

bankruptcy court has subject matter jurisdiction to determine whether a debtor has fully

performed his obligations under a confirmed chapter 13 plan that provides for a cure of a

prepetition mortgage delinquency pursuant to 11 U.S.C. §1322(b)(5).

---

[9]     Accord Padilla I, 365 B.R. at 499-500.

**B.**

Chase also contends that the court lacks jurisdiction because, as a factual matter, the

dispute arises out of the Debtor's failure to make payments that fell due after the closing of the

bankruptcy case.[10]  The Debtor disagrees and points to evidence that suggests that the alleged

default is traceable to either: (1) the manner in which the plan payments the Chapter 13 Trustee

distributed were credited against the prepetition default;[11] or (2) monthly instalments falling due

---

[10]      In at least in one respect, Chase has acted consistently with its "concession" that the
Debtor cured his prepetition default during his chapter 13 bankruptcy case and that the alleged default
arises from events occurring after the closing of the bankruptcy case.  Before the Debtor filed the chapter
13 case, Chase obtained a prepetition judgment against him in mortgage foreclosure.  If Chase did not
believe that a cure was effected during the bankruptcy case, after the closing of the bankruptcy case, Chase
simply might have scheduled a sheriff's sale of the Debtor's residential real property based on the
prepetition judgment.  That is what the creditor in Venuto did.  See 343 B.R. at 122-23.  Here, however,
Chase commenced a new mortgage foreclosure action against the Debtor after the conclusion of the
bankruptcy case.

[11]      In paragraph 6 of its Complaint in the Foreclosure Action, Chase alleges that it is entitled
to collect:

**Cumulative Late Charges                 $125.00**
   **09/11/1998 to 03/15/1901**

In his Answer to the Complaint in the Foreclosure Action, the Debtor asserts:

Cumulative Late Charges from 09/11/1998 to 03/15/1901 are nonsensical and
highly questionable.  If the Plaintiff meant 03/15/2001 instead of 03/15/1901, then
the Plaintiff is attempting to collect debt discharged by the Bankruptcy Court.

Answer to Complaint ¶6.

        To the extent the Debtor suggests that any part of his debt to Chase was discharged, he is
incorrect.  Claims that are provided for in a plan in the manner permitted by §1322(b)(5) are not
discharged after the completion of the plan.  See 11 U.S.C. §1328(a)(1); Padilla II, 389 B.R. at 418-19.
That said, there can be no doubt that any attempt by Chase to collect prepetition late charges would be
improper in light of the distribution made by the Chapter 13 Trustee in full payment of Chase's proof of
claim for the Prepetition Arrears.  In the AP Complaint, the Debtor modified his legal theory, discarded the
discharge violation argument and asserted that Chase's conduct is inconsistent with the Debtor's confirmed
chapter plan and violates 11 U.S.C. §1327(a).  See generally In re Pitts, 354 B.R. 58, 65-66 (Bankr. E.D.

-12-

or other charges assessed on the Debtor's mortgage account during the pendency of the

bankruptcy case.[12]

Chase's argument that the court lacks jurisdiction is flawed because it conflates the

exercise of the court's subject matter jurisdiction with the merits of the parties' dispute.   To find

that the court lacks jurisdiction, as Chase urges I would have to resolve the parties' competing

---

Pa. 2006).

[12]    Attached to the Complaint is a Notice of Intention to Foreclose, dated June 27, 2008 ("the Act 6 Notice"), that Chase sent to the Debtor before commencing the Foreclosure Action.  The Act 6 Notice is a statutorily mandated pre-foreclosure notice that mortgage lenders must send to certain residential mortgagors in Pennsylvania before commencing any legal action to recover under the mortgage obligation.  See 41 P.S. §403.  Generally, the Act 6 Notice must inform the borrower, inter alia, of "the nature of the default, the legal right under Act 6 to cure the default, exactly what performance (including what sum of money, if any) must be tendered to cure the default and the time within which the debtor must cure the default in order to prevent foreclosure or other legal proceedings."  In re Schwartz, 68 B.R. at 378.

Chase's June 27, 2008 Act 6 Notice described the Debtor's mortgage default as follows:

| | |
|---|---|
| **Payments of $351.05 each for February 20, 2008 through June 20, 2008: (Corporate Advances included)** | **$2,534.49** |
| **Current Late Charges** | **83.80** |
| **Deferred Late Charges** | **20.95** |
| **Advances by Servicer** | **444.24** |
| **Less: Partial Payments/Forbearance: Miscellaneous Unapplied Funds** | **311.62** |
| **TOTAL AMOUNT DUE TO CURE DEFAULT** | **2,771.86** |

On its face, the only time period referenced in the Act 6 Notice (February 2008 to June 2008) pertains to the allegedly unpaid monthly instalments.  Yet, the Debtor attached to his Answer to Complaint in the Foreclosure Action bank records suggesting that the he made the monthly payments of $351.05 between February and June 2008.  If so, Chase may have credited those payments against monthly instalments that fell due and were allegedly unpaid prior to February 2008 (during the pendency of the bankruptcy case).

factual contentions regarding the source of the alleged default in Chase's favor.    Those same

factual contentions are at the core of the Debtor's claim on the merits.    This is not the proper

time to resolve those material factual disputes.   My task at this stage of the proceeding is merely

to identify the claims that the Debtor seeks to pursue, determine if the bankruptcy court has

subject matter jurisdiction over the claims as articulated by the Debtor and, if so, evaluate whether

I should exercise that jurisdiction.[13]

For these reasons, I conclude that the court has jurisdiction over the claim the Debtor

asserts in the AP, making it permissible to grant the Motion to Reopen.

## V.   THE COURT WILL REOPEN THE CASE AND EXERCISE ITS JURISDICTION

### A.

"[T]he existence of subject matter jurisdiction does not necessarily mean that the court

must reopen the case and exercise its jurisdiction."   Padilla I, 365 B.R. at 502 (citing In re Otto,

311 B.R. 43, 47 (Bankr. E.D. Pa. 2004).  As explained below, there are a myriad of factors  that a

bankruptcy court may consider in deciding whether to exercise its subject matter jurisdiction.

The issue here arises in the context of a motion to reopen a closed bankruptcy case.

Section 350(b) of the Bankruptcy Code provides that a bankruptcy case may be reopened "to

---

[13]       Of course, the bankruptcy court has the discretion to deny a motion to reopen if it is clear
at the outset that the debtor would not be entitled to any relief if the case were reopened.   Antonious, 373
B.R. at 405-06; Otto, 311 B.R. at 47.   In other words, if the debtor is not entitled to the requested relief as
matter of law, reopening the case would be a futile action, making it appropriate to deny a motion to reopen
the case.   That principle is not applicable here.   The Debtor's legal theory is that Chase is attempting to
collect monies to which it is not entitled under applicable bankruptcy and non-bankruptcy law.   Depending
upon what facts are proven at a hearing on the merits, it is unknown whether the Debtor will be entitled to
the relief that he seeks.

administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §350(b).  The

decision to reopen the case is within the broad discretion of the bankruptcy court.  E.g., In re

Zinchiak, 406 F.3d 214, 223 (3d Cir. 2005).  A bankruptcy court's decision to reopen a case

under §350(b) is reviewed for abuse of discretion.  Donaldson v. Bernstein, 104 F.3d 547, 551

(3d Cir. 1997); Judd v. Wolfe, 78 F.3d 110, 116 (3d Cir. 1996).

      Section 350(b) authorizes the reopening of a case "to accord relief to the debtor."  Based

on the statutory text, it generally is appropriate for a bankruptcy court to exercise its discretion

and reopen a case to consider affording relief to a debtor who asserts a right provided under title

11 or in a prior order of the bankruptcy court.  See In re Dodge, 138 B.R. 602, 605 (Bankr. E.D.

Cal. 1992); see also In re Sheckard, 386 B.R. 118, 125 (Bankr. E.D. Pa.), aff'd, 394 B.R. 56

(E.D. Pa. 2008); In re Searles, 70 B.R. 266 (D.R.I. 1987).  Nevertheless, the moving party  – in

this case, the Debtor  – has the burden of demonstrating the existence of circumstances sufficient

to justify reopening the case.  E.g., In re Otto, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004).

      The various considerations that guide the exercise of the court's discretion in determining

the propriety of reopening the case include:

(1)      [the] length of time that the case was closed;

(2)      whether a non-bankruptcy forum, such as state court, has the ability to
determine the issue sought to be posed by the debtor;

(3)      whether prior litigation in bankruptcy court implicitly determined that the
state court would be the appropriate forum to determine the parties' rights,
post-bankruptcy;

(4)      whether any parties would be prejudiced if the case were/were not

-15-

reopened;

(5)    [the] extent of the benefit which the debtor seeks to achieve by reopening; and

(6)    whether it [is] clear at the outset that the debtor would not be entitled to any relief after the case was reopened.

Id.; see also In re Antonious, 373 B.R. 400, 405-06 (Bankr. E.D. Pa. 2007).

In some cases, it is helpful to conceptualize a bankruptcy court's decision whether to reopen a closed bankruptcy case as the exercise of the court's more fundamental power to "permissively abstain." The statutory authority for permissive abstention is found in 28 U.S.C. §1334(c), which provides, in pertinent part, that:

nothing in this section prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The decision whether to abstain, too, is within the sound discretion of the bankruptcy court. E.g., McDaniel v. ABN Amro Mortgage Group, 364 B.R. 644, 650 (S.D. Ohio 2007); In re Thaggard, 180 B.R. 659, 663 (M.D. Ala. 1995). In exercising this discretion, courts will consider various factors:

1.    the presence in the proceeding of nondebtor parties;

2.    the extent to which state law issues predominate over bankruptcy issues;

3.    the difficulty or unsettled nature of the applicable law;

-16-

4.   the presence of a related proceeding commenced in state court or other nonbankruptcy court;

5.   the jurisdictional basis, if any, other than 28 U.S.C. §1334;

6.   the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7.   the substance rather than form of an asserted "core" proceeding;

8.   the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9.   the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

10.  the existence of a right to a jury trial;

11.  the burden on the bankruptcy court's docket; and

12.  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.

E.g., In re Asousa Partnership, 264 B.R. 376, 391 (Bankr. E.D. Pa. 2001).

The circumstances presented in this case  –  a request to reopen a closed bankruptcy case to adjudicate issues that are the subject of a pending state court proceeding  –  also are analogous to a bankruptcy court's determination whether to exercise its discretion to remand a proceeding removed from state court pursuant to 28 U.S.C. §1452(a).  In deciding whether to remand a removed proceeding, bankruptcy courts consider factors akin to the permissive abstention factors

-17-

set forth above.  In particular, the court may focus on the degree to which the issues in the

removed proceeding are dominated by state law and the degree to which resolution of the matter

will affect the administration of the bankruptcy case.  Compare DVI Fin. Serv., Inc. v.

Cardiovascular Lab., Inc., 2004 WL 727105, at *2 (Bankr. E.D. Pa. Mar. 18, 2004) (if grounds

exist for discretionary abstention under 28 U.S.C. §1334(c)(1), then remand of a removed

proceeding under 28 U.S.C. §1452(b) is also proper) with In re Raymark Indus., Inc., 238 B.R.

295, 299 (Bankr. E.D. Pa. 1999) (the extent to which issues of state law predominate, comity

with the state courts and the degree of relatedness or remoteness of the proceeding to the main

bankruptcy case are among the factors to be considered in deciding whether to abstain under 28

U.S.C. §1334(c)(1)).

Whether considered through the prism of the six (6) factor analysis for reopening cases set

forth in Otto, the twelve (12) factor §1334(c)(1) abstention set forth in Asousa (and numerous

other cases) or the balancing of state and federal interests that is influential in making  remand

decisions under §1452(b), the court's evaluation of the numerous potentially relevant

considerations is not a mechanical or mathematical exercise.   The court need not plod through a

discussion of each factor in the laundry lists developed in prior decisions.  As one court has

observed,

> the list of factors is non-exclusive and was developed simply as a guide to the
> required inquiry; the wise exercise of discretion is rarely a matter of score-keeping
> or bean-counting. Ultimately, the pursuit of "equit[y]," "justice" and "comity"
> involves a thoughtful, complex assessment of what makes good sense in the
> totality of the circumstances.

Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. Partnership, 2004 WL 1048239, at *3 (S.D.N.Y.

May 7, 2004) (alterations in original).

**B.**

Chase seeks to frame the dispute as one arising exclusively under state law, from events that occurred entirely after the closing of the bankruptcy case.  The Debtor views the dispute as arising out of the administration of his chapter 13 plan and, in particular, Chase's accounting of the money it received for both payment of the Prepetition Arrears and the postpetition "maintenance of payments" obligation.

Initially, I am satisfied that the Debtor's allegations (that Chase's alleged wrongful conduct arises out of its failure to properly credit either the payments received from the Chapter 13 Trustee distribution in payment of the Prepetition Arrears or the Debtor's postpetition payments) are made in good faith, have some evidentiary basis and are not put forward as a forum shopping device.  See nn.11-12, supra.

In weighing the competing interests, I find particularly significant the Debtor's contention regarding Chase's alleged ongoing demand for payment of prepetition late charges.  If proven, the Debtor's claim is tied directly to the bankruptcy court's claims allowance and distribution processes in chapter 13 cases.  The bankruptcy system has a substantial interest in protecting the integrity of these processes and in enforcing the principle set forth in 11 U.S.C. §1327 that the provisions of a confirmed plan bind the debtor and each creditor.  The Debtor's claim that Chase continues to try to collect the Prepetition Arrears involves a significant federal bankruptcy interest

-19-

warranting the exercise of this court's subject matter jurisdiction.[14]

Thus, this is not a case in which the only dispute between the debtor and the creditor is simply whether the debtor fulfilled his postpetition obligations to the creditor, i.e., whether the debtor satisfied the §1322(b)(5) "maintenance of payments requirement," a subject not addressed in any detail in the Debtor's chapter 13 plan and therefore, a dispute that must be determined under applicable state law.  See generally Padilla II, 389 B.R. at 437 (also involving a plan that contained no express provisions concerning the "maintenance of payments requirement and concluding that neither the Bankruptcy Code, the national rules of court, nor the local rules of this court impose any procedural requirements on a mortgagee that would invalidate any postpetition obligations a debtor may have under a mortgage being treated under § 1322(b)(5) of the debtor's chapter 13 plan).  A dispute involving only whether the debtor fully complied with the "maintenance of payments" obligation under §1322(b)(5) and whose resolution likely requires consideration of only the note, mortgage and applicable state law, may present a stronger basis for abstention, particularly if there is a pending state court proceeding.  However, that is not the case presented; here, the Debtor has raised issues regarding Chase's treatment of the plan distributions made on account of the Prepetition Arrears.[15]

_____

[14]    I recognize that it may appear easy for a debtor to make an allegation that a creditor has continued its efforts to collect amounts owed as prepetition arrears – particularly in light of the potential complexities of mortgage accounting.  In this case, I am not concerned that the Debtor is making that allegation solely to support the exercise of federal bankruptcy jurisdiction.  The Debtor's claim that Chase is attempting to collect prepetition charges is not a mere, bald assertion.  Rather, it is concrete and derived from the face of Chase's Complaint in the Foreclosure Action.  See n.11, supra.

[15]    Earlier, I analogized a motion to reopen a closed case to a motion to abstain and remand a removed proceeding and pointed out that in evaluating such motions, bankruptcy courts may focus on the degree to which the issues in the removed proceeding are dominated by state law and the degree to which

Further, while less significant, other factors traditionally analyzed when courts consider permissive abstention or reopening closed cases support the exercise of this court's subject matter jurisdiction.  The case was closed for a relatively short period of time, seven (7) months. The dispute does not involve third parties who are otherwise unconnected to the bankruptcy case.  It is not clear at the outset that the debtor's request for relief will be fruitless.  See generally Otto, 311 B.R. at 47.  There are likely no difficult, unsettled issues of state law.  There is no risk of depriving a party of a right to a jury trial (Chase did not request a jury trial in the Foreclosure Action and the Debtor obviously is prepared to waive his right to one).  And, I do not expect this matter to impose an undue burden on this court's docket.  See generally Asousa, 264 B.R. at 391.

There are some countervailing considerations supporting abstention in this matter: the pendency of the Foreclosure Action in state court and the possibility that it may yet turn out that the note, mortgage and state law provide the rules of decision in this dispute.  However on balance, I conclude that bankruptcy policy is better served by exercising subject matter jurisdiction over the parties' dispute.

---

resolution of the matter will affect administration of the bankruptcy case.  See Part V.A, supra.  In the context of a motion to reopen a closed chapter 13 case, it is unlikely that a state-law based dispute will impact substantially the administration of the bankruptcy case because there is no extant case being administered.  Thus, if a dispute appears to turn entirely, or at least primarily, on state law issues and there are no equitable or other factors favoring the exercise of bankruptcy jurisdiction, the bankruptcy court may have good reason to decline to reopen a chapter 13 case and thereby, defer to a pending state court proceeding.  Where, however, a debtor articulates a colorable claim that is closely linked to the administration of the bankruptcy case or to a specific provision of a debtor's chapter 13 plan or that requires the construction of a provision of the Bankruptcy Code, the balance may tip in favor of exercising bankruptcy jurisdiction.

## VI.   CONCLUSION

For the reasons set forth above, the Motion to Reopen will be granted.  Because I am

exercising my discretion to assert subject matter jurisdiction to adjudicate the parties' dispute, I

also will enter an Order denying Chase's Motion to Dismiss in the AP.


Date:   November 7, 2008

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**